**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**NORMAN L. TALLEY,**

        **Movant,**

**v.**                                **Case No. 3:13-cv-01754
                                       (Criminal No. 3:10-cr-00038-1)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 202), and the Government's Motion to Deny Talley's Petition as Untimely. (ECF No. 209). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED,** and this action be **DISMISSED, with prejudice,** and removed from the docket of the Court.

**I.**    **Procedural History**

On March 3, 2010, Movant Norman L. Talley ("Talley") was indicted by a federal grand jury on four counts in an indictment alleging (1) that he conspired with two other

individuals to distribute 50 grams or more of cocaine base and a quantity of heroin in violation of 21 U.S.C. § 846; (2) that he and another individual, aided and abetted by each other, knowingly and intentionally possessed with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) that he and another individual, aided and abetted by each other, knowingly and intentionally possessed with intent to distribute a quantity of heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (4) that he knowingly possessed a firearm while having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (ECF No. 2).

A two-day jury trial of Talley took place on November 1 and 2, 2010.  (ECF Nos. 185, 186, 187). On November 2, 2010, the jury returned guilty verdicts against Talley on all four counts. (ECF No. 187 at 119-20). On February 22, 2011, Talley was sentenced to 210 months imprisonment to run concurrently on all counts, based upon a total offense level of 34 and criminal history category of III.[1] (ECF No. 188 at 21, 31). On February 24, 2011, Talley appealed his conviction to the United States Court of Appeals for the Fourth Circuit. (ECF No. 172). The Fourth Circuit affirmed Talley's conviction on October 11, 2011, (ECF Nos. 193, 194, 195), and issued a formal mandate on November 2, 2011. (ECF No. 196).

On January 28, 2013, Talley filed the instant petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 202). On May 1, 2013, the Government filed a Motion to Deny Talley's Petition as Untimely, (ECF No. 209), and

---

[1] Talley's offense level was 32 based upon 297 grams of cocaine base and 13 grams of heroin attributable to him, and he received a two level increase due to possession of a dangerous weapon. (ECF No. 188 at 21). Talley had four criminal history points with a corresponding criminal history category of III. (*Id.*). Accordingly, his recommended guideline range was 188 to 235 months imprisonment. (*Id.*).

on June 3, 2013, Talley filed a Reply Brief arguing in favor of equitable tolling. (ECF No. 211).

II.   **Timeliness of Movant's § 2255 Motion**

Section 2255 motions are subject to a 1-year period of limitation, which begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). In *Clay v. United States*, the United States Supreme Court held that "for federal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." 537 U.S. 522, 532, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003). Under Rule 13 of the Rules of the Supreme Court of the United States, a criminal defendant has 90 days from the date of entry of the judgment to petition for a writ of certiorari. Thus, for a criminal defendant who does not petition for certiorari, the one-year limitation period for filing a § 2255 petition ends one year and 90 days after the Circuit Court of Appeals enters its judgment. *See Clay*, 537 U.S. at 532.

Here, Talley concedes that his § 2255 petition dated January 28, 2013 was not timely filed, (ECF No. 207 at 1), but argues that he is entitled to equitable tolling pursuant to the Supreme Court's holding in *Holland v. Florida*. (ECF No. 207 at 1-5;

211).[2] Talley seeks equitable tolling based upon (1) his attorney's erroneous advice that his time to file a certiorari petition was "calculated from the [Circuit] Court's Mandate issued and mailed to [him on November 2, 1011." (ECF No. 207 at 2; 207-1 at 2); and (2) a medical emergency which prevented him from conducting legal research and preparing his § 2255 petition between October 26, 2012 and November 19, 2012. (ECF No. 207 at 3).

In *Holland v. Florida*, the Supreme Court determined that the one-year limitations period for seeking § 2254 habeas relief from a state conviction is subject to equitable tolling where the petitioner can demonstrate "(1) that he has been pursuing his rights diligently, and (2) the some extraordinary circumstance stood in his way and prevented timely filing." 560 U.S. 631, 645, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotations omitted). The one-year limitations period for seeking § 2255 habeas relief from a federal conviction is similarly subject to equitable tolling. *See United States v. Oriakhi*, 394 F. App'x 976, 977 (4th Cir. 2010); *United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000). Nevertheless, the Fourth Circuit Court of Appeals has cautioned that:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where-due to circumstances external to the party's own conduct-it would be

---

[2] Talley's conviction was affirmed on direct appeal by the Fourth Circuit on October 11, 2011. (ECF No. 203 at 1). Therefore, his became final for § 2255 purposes on January 9, 2012, or 90 days after October 11, 2011. *See Clay*, 537 U.S. at 532. Thus, Talley's § 2255 petition, which is dated January 28, 2013, was not timely filed.

unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 331 (4th Cir. 2000). Talley's arguments in support of equitable tolling are unpersuasive.

First, Talley argues that his attorney's mistaken advice regarding the time period for filing a petition for certiorari constitutes an extraordinary circumstance warranting equitable tolling. (ECF No. 211 at 3). However, the Fourth Circuit has conclusively held that "a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." *Harris*, 209 F.3d at 331; *see also Rouse v. Lee*, 339 F.3d 238, 248-50 (4th Cir. 2003). Indeed, as the Government points out, the Fourth Circuit Court of Appeals' Notice of Judgment explicitly instructs Talley that "[t]o be timely, a petition for certiorari must be filed in the United States Supreme Court within 90 days of this court's entry of judgment. The time does not run from issuance of the mandate." (ECF No. 195 at 1). Likewise, a Certiorari Status Form served on Talley on November 23, 2011 reiterates that [t]he petition for certiorari must be filed in the Supreme Court within 90 days of this [Circuit] Court's decision" and that "[t]he certiorari period runs from this Court's decision or denial of panel or en banc rehearing, not from issuance of the Court's mandate." (ECF No. 209-4). Talley's claim is further attenuated because trial counsel did not even directly advise him on the limitations date for filing his § 2255 petition. Ultimately, Talley's "ignorance of the law cannot support equitable tolling." *Oriakhi*, 394 F. App'x at 977.

Second, Talley argues that equitable tolling should apply because he "cut part of his left thumb off while working in FCI-Milan Food Service Butcher Shop and was on medical lay-in confined to B-2 Housing Unit and in extreme pain" between October 26, 2012 and November 19, 2012, during which time he was "incapable of conducting legal research and preparing his § 2255 petition." (ECF No. 207 at 3). However, even accepting as true that Talley was incapable of working on his § 2255 petition for "approximately 24 days," (*Id*.), he offers no explanation as to why he was unable to file prior to his accident, and has failed to demonstrate that he was incapacitated "for a substantial part of the limitations period," *Rouse*, 339 F.3d at 248 n.10; *see also Smith v. Clarke*, No. 2:12-cv-578, 2013 WL 1856230, at *3 (E.D. Va. Mar. 26, 2013). He has also failed to explain how his purported incapacity prevented him from subsequently filing his § 2255 petition in a timely manner. *See Lowe v. United States*, No. 4:10crl32, 2013 WL 6091866, at *6 n.2 (E.D. Va. Nov. 18, 2013); *Wilson v. VA D.O.C.*, No. 7:09CV00127, 2009 WL 3294835, at *4 (W.D. Va. Oct. 13, 2009) ("Allegations of even serious mental illness or physical injuries are not sufficient to warrant invocation of equitable tolling unless petitioner also demonstrates how these conditions constituted an extraordinary circumstance that prevented him from filing a timely petition.").

Accordingly, the undersigned **RECOMMENDS** that the District Court **FIND** that Talley has failed to present extraordinary circumstances warranting equitable tolling and **GRANT** the Government's Motion to Dismiss Talley's § 2255 petition as untimely. (ECF No. 209). Notwithstanding the issue of timeliness, the undersigned has considered the substantive issues raised by Talley and further recommends that Talley's petition be **DISMISSED** on the merits of his claims.

III.   **Movant's Grounds to Vacate, Set Aside, or Correct His Sentence**

Talley asserts that trial counsel provided ineffective assistance by (1) failing to argue that the government violated his rights under the Speedy Trial Act; (2) failing to object to several of the counts in the indictment as "improperly multiplicitous"; (3) failing to impeach government witness Ashley May based upon inconsistent prior statements; (4) failing to request and object to certain jury instructions; (5) failing to object to the § 851 enhancement on the ground that the Government failed to provide certified copies of his prior convictions; and (6) failing to "present a reasonable trial strategy" and failing to adequately investigate Talley's case, interview the Government's witnesses, and pursue various character witnesses. (ECF No. 202 at 4-10).

IV.   **Standard Under 28 U.S.C. §2255**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence entered in a separate proceeding. *Wall v. Kholi*, 131 S.Ct. 1278, 1284-85, 179 L.Ed.2d. 252 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion. *United States v. Harrison*, No. 96-7579, 1997 WL 499671, at *1 (4th Cir. Aug. 25, 1997) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

In this case, Talley attacks his conviction and sentence on the ground that his Sixth Amendment right to the effective assistance of counsel was denied at the trial and

sentencing stages of the proceedings. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel during critical stages of criminal proceedings, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), including sentencing, *see Glover v. United States,* 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), and direct appeal. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Strickland,* 466 U.S. at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

Under *Strickland*, a defendant can prove ineffective assistance of counsel by meeting the requirements of a two-prong test. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994). First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. When evaluating counsel's performance under the first prong of *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (internal

quotations omitted). The second prong of the *Strickland* test requires the defendant to affirmatively establish prejudice; that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Moreover, the Court is "not at liberty to rely on hindsight to reconstruct the circumstances of counsel's conduct." *Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012). Rather, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, "the reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

## V.  **Discussion**

### A.  **Speedy Trial Act**

Talley argues that his rights under the Speedy Trial Act, 18 U.S.C. § 3161, were violated, and that his trial attorney Philip B. Sword provided ineffective assistance by failing to file a Motion to Dismiss the Indictment with Prejudice following the expiration of the 70 day limit. (ECF No. 207 at 10-12).  This argument is plainly meritless.

Under the Speedy Trial Act, a criminal defendant's trial must commence "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). However, certain periods of delay are explicitly excluded "in computing the time within which the trial of any such offense must commence," including "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(a).

In Talley's case, he was indicted on March 3, 2010, and his initial appearance was held on March 10, 2010. (ECF Nos. 2, 19). Although his trial was initially set for May 11, 2010, (ECF No. 23), his trial ultimately commenced on November 1, 2010, (ECF No. 186), as a result of four separate continuances granted by the District Court, each pursuant to a finding that "the ends of justice served by granting a continuance outweigh[ed] the best interest of the public and the defendant[] in a speedy trial." (ECF Nos. 59, 82, 96, 103). On April 13, 2010, a continuance was granted pursuant to motions from Talley's codefendants, and without objection from Talley's counsel at the time, George Vieweg. (ECF No. 59). On May 18, 2010, a continuance was granted pursuant to Talley's motion, because "Counsel for Defendant [was] undergoing eye surgery on May 28, 2010, and required 4-6 weeks of recovery time." (ECF No. 82). On July 7, 2010, a continuance was granted pursuant to the Government's motion on the ground that a Forensic Chemist was unable to testify on the trial date. (ECF No. 96). On August 24,

2010, a continuance was granted as a result of Attorney Vieweg's withdrawal from representing Talley.[3] (ECF No. 103). As a result of these continuances, the times between May 11, 2010 and June 2, 2010; June 2, 2010 and July 20, 2010; July 20, 2010 and September 8, 2010; and September 8, 2010 and November 2, 2010, were excludable from the computation of time within which trial must commence under 18 U.S.C. § 3161(h). (ECF Nos. 59, 82, 96, 103). Although the period of time from March 10, 2010 to November 2, 2010 spanned more than 70 days, the period of time from May 11, 2010 to November 2, 2010 was excludable. Because the period of time from March 10, 2010 to May 11, 2010 spanned less than 70 days, Talley's rights under the Speedy Trial Act remained intact. Trial counsel's failure to move for dismissal under the Speedy Trial Act was therefore neither unreasonable nor prejudicial.

Accordingly, the undersigned **RECOMMENDS** that the District Court **FIND** that trial counsel did not provide ineffective assistance for failing to seek the dismissal of Talley's indictment under the Speedy Trial Act.

### B. Multiplicitous Counts

Talley argues that trial counsel's failure to challenge his indictment for containing "improperly multiplicitous" charges constituted ineffective assistance. Count One of Talley's indictment alleged that he conspired to distribute 50 grams or more of cocaine base and a quantity of heroin. (ECF No. 2 at 1). Counts Two and Three alleged that Talley and another individual, while aided and abetted by each other, possessed with intent to distribute 50 grams or more of cocaine base, and a quantity of heroin, respectively. (*Id.* at 2-3). According to Talley, his convictions on Counts Two and Count

---

[3] Attorney Vieweg was subsequently replaced by Attorney Philip B. Sword as appointed counsel for Talley. (ECF No. 107).

Three "must be vacated as a matter of law pursuant to *Ball v. United States*," because "the government charging instrument charges specifically conspiracy and aiding and abetting which are indistinguishable." (ECF No. 207 at 6).

Talley's reliance upon *Ball v. United States* is misplaced. In *Ball*, the defendant, "a previously convicted felon, was indicted on charges of receiving a firearm shipped in interstate commerce, 18 U.S.C. §§ 922(h)(1) and 924(a), and possessing that firearm, 18 U.S.C. App'x § 1202(a)(1)," with both counts stemming from the same conduct. 470 U.S. 856, 857, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). The Supreme Court held that while "a convicted felon may be prosecuted simultaneously for violation of §§ 922(h) and 1202(a)," he may "be convicted and punished for only one of the two offenses if the possession of the firearm is incidental to receiving it." *Id.* at 861. In so holding, the Supreme Court "relied on the test of statutory construction stated in *Blockburger v. United States*, to determine whether Congress intended the same conduct to be punishable under two criminal provisions." *Id.* Under *Blockburger*, the relevant inquiry is "whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *see Ball*, 740 U.S. at 861 (collecting cases). "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). Thus, in applying the *Blockburger* rule to the relevant firearms statutes, the *Ball* Court concluded that "it is clear that Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon." *Ball*, 740 U.S. at 862.

Consequently, while "[i]t is true that an indictment charging a single offense in several different counts is multiplicitous and subjects a defendant to a risk of multiple sentences for a single offense in violation of the Double Jeopardy Clause," it is "nonetheless well-established that a defendant may be convicted of separate offenses arising from a single act if each charge requires proof of a fact that the other does not." *United States v. Dauberman*, 305 F. App'x 995, 997 (4th Cir. 2009) (citing *Blockburger*, 284 U.S. at 304). Here, Talley asserts that conspiracy and aiding and abetting are indistinguishable offenses. (ECF No. 207 at 6). This is simply incorrect.

In order to convict a criminal defendant under 21 U.S.C. § 846, the government must establish three essential elements beyond a reasonable doubt: "(1) an agreement to unlawfully distribute controlled substances existed between two or more persons; (2) defendants knew of the conspiracy; and (3) defendants knowingly and voluntarily became a part of this conspiracy." *United States v. Boccone*, Nos. 12-4949, 12-4952, 2014 WL 643016, at *16 (4th Cir. 2014) (citing *United States v. Burgos*, 94 F.2d 849, 858 (4th Cir. 1996)). There, "the gist or gravamen of the crime of conspiracy is an agreement to effectuate a criminal act." *United States v. Laughman*, 618 F.2d 1067, 1074 (4th Cir. 1980). The elements necessary to convict a defendant as a principal under 21 U.S.C. § 841 are: "(1) possession of the cocaine base; (2) knowledge of this possession; and (3) intention to distribute the cocaine base." *Burgos*, 94 F.3d at 873. In order to convict a defendant as an aider and abettor, *see* 18 U.S.C. § 2, the government must establish that he "'knowingly associated himself with and participated in the criminal venture,' here, distribution of cocaine base." *United States v. Yearwood*, 518 F.3d 220, 227 (4th Cir. 2008). Thus, "[t]he same evidence establishing a defendant's participation in a conspiracy may support a conclusion that a defendant participated in

13

the principal's unlawful intent to possess and distribute drugs, thereby proving guilt of aiding and abetting as well," *Burgos*, 94 F.3d at 873.

To the extent Talley argues "that an overlap exists between the 'knowingly associated himself with and participated in the criminal venture' element of aiding and abetting the substantive offense and the 'knowingly and voluntarily became a part of th[e] conspiracy' element of conspiracy," the Fourth Circuit has explained that "the two are separate: the former involves participation in the criminal act itself; the latter involves participation in an *agreement* to perform that act." *Yearwood*, 518 F.3d at 228. Thus, contrary to Talley's belief, his convictions for conspiracy under 21 U.S.C. § 846 and distribution of illegal substances, either as a principal or an aider and abettor under 21 U.S.C. § 841 and 18 U.S.C. § 2 are not unconstitutionally multiplicitous, as they "required different proof to establish different elements." *See Dauberman*, 305 F. App'x at 997. Trial counsel's failure to seek dismissal of his convictions on Counts Two and Three was therefore neither unreasonable nor prejudicial.

Accordingly, the undersigned **RECOMMENDS** that the District Court **FIND** that trial counsel did not provide ineffective assistance for failing to seek the dismissal of Counts Two and Three as unconstitutionally multiplicitous.

### C. Performance at Trial

#### 1. Impeachment of Government Witness

Talley alleges that trial counsel's "failure to impeach the government's star witness Ashley May" regarding her prior "inconsistent statements in reference to police report signed confession and grand jury testimony" constituted ineffective assistance of counsel, as impeachment would have cast serious doubt on her credibility. (ECF No. 207 at 12-13). However, Talley concedes that trial counsel did in fact impeach Ashley May "in

14

reference to her signed confession to the police," and further that Ms. May "did not testify before the grand jury." (*Id.* at 13). Rather, Talley asserts that Ashley May "gave another, contradictory statement that she knew nothing about any drug related activity and that none of the seized items belonged to her," which trial counsel failed to "properly utilize" for impeachment purposes at trial. (*Id.* at 13-14).

Although a trial counsel's failure to impeach a witness with prior inconsistent statements may, under certain circumstances constitute "a breach with so much potential to infect other evidence that, without it, there is a reasonable probability that the jury would find reasonable doubt of [a defendant's] guilt," *Driscoll v. Delo*, 71 F.3d 701, 711 (8th Cir. 1995), in general "[i]nadequate cross-examination will rarely be the basis for a finding of ineffective assistance of counsel," as "[c]ourts recognize that 'most attorneys make some mistakes during cross-examination." *Gamble v. Warden Lee Correctional Inst.*, Civil Action No. 3:07-4049-HFF-JRM, 2009 WL 187816, at *8 (D.S.C. Jan. 26, 2009). "A hindsight review of any cross-examination will unquestionably reveal an opportunity to ask one more question or highlight one more point; however, in the midst of a trial with an adverse witness on the stand, a lawyer must always make split-second decisions as to how to best shape his questioning in order to extract the most desirable responses." *Yarbrough v. Johnson*, 490 F.Supp.2d 694, 738-39 (E.D. Va. 2007).

Here, Talley has failed to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To begin with, this is not a case in which Ms. May's prior inconsistent statements were unknown to the jury. *See Driscoll*, 71 F.3d at 710. During Ms. May's direct examination, she testified to making three prior statements: First, she told police

immediately after her arrest that she "had come to Huntington on [her] own and that everything belonged to [her], including the gun and all the drugs, and that [the defendant] was just there for [her] protection." (ECF No. 164 at 21). Ms. May explained that she did so at Talley's urging, based upon an understanding that she "would only get probation" and after Talley told her that he would marry her and adopt her children if she claimed full responsibility for the drugs and their distribution. (*Id.*). Second, after being charged in State court, Ms. May met with a prosecutor and made a statement that she "didn't know anything about anything, and [she] tried to play innocent and was hoping that [she] could get out of this some kind of way." (*Id.* at 22). Ms. May explained that she made this statement "[b]ecause [she] just wanted this nightmare to end" and she "just wanted to go home to [her] kids." (*Id.*). Finally, after being indicted on federal charges, Ms. May provided a third statement consistent with her testimony, which formed the basis of her plea agreement with the Government. (*Id.* at 22-23, 39-41).

During cross-examination, trial counsel questioned Ms. May extensively regarding the history of her relationship with Talley, her first confessional statement taking exclusive responsibility for the operations, and the terms of her plea agreement, including the sentencing benefits she received as a result of pleading guilty to her own federal charges. (*Id.* at 24-45). Given that the jury had already been informed of Ms. May's prior inconsistent statements, it was not unreasonable for trial counsel to focus on the first statement, in which she confessed to solely possessing the drugs and firearm, as this statement figured prominently in his defense strategy. (ECF No. 187 at 96) ("First off, someone else confessed. Someone else confessed. I'm not sure you need to go any further than that."). Furthermore, Talley's claim that he suffered actual prejudice from trial counsel's failure to "properly utilize all of" Ashley May's prior inconsistent

16

statements is purely speculative, particularly in light of the additional testimonies of Travis Boling, Launa Seay, and Robert Harrison, all of whom consistently and independently linked Talley to the possession and distribution of drugs. (ECF Nos. 186 at 70-93, 93-114; 187 at 13-37).

Thus, the undersigned **RECOMMENDS** that the District Court **FIND** that trial counsel did not provide ineffective assistance for failing to cross-examine Ashley May regarding her prior inconsistent statement that she was innocent of any drug activity.

### 2. Jury Instructions

Talley asserts that trial counsel provided ineffective assistance "for failing to object to the 'co-defendant accomplice' instruction" given to the jury, and argues that trial counsel "should have requested a 'paid informant instruction' be given to the jury" regarding Government witness Ashley May. (ECF No. 207 at 16). The specific instruction provided by the District Court regarding Ashley May is as follows:

> Ashley May testified. She testified as an immunized witness, that is, someone who has been told that her testimony would not be used against her. In addition, she entered into a plea agreement and pleaded guilty to the charge arising out of this case. Moreover, she is an alleged accomplice. That is, she is someone who says she participated with the defendant in the commission of a crime.
>
> For all these reasons, you should consider her testimony with greater care than the testimony of other witnesses. You must also not draw any conclusions about the guilt of the defendant, Mr. Talley, based simply on the fact that Ashley May, a co-defendant, has entered a guilty plea.

(ECF No. 187 at 74). Talley has failed to demonstrate ineffective assistance with respect to the jury instruction regarding Ashley May.

There is no question that the co-defendant accomplice instruction was appropriate in this case. "The general rule is that accomplice instructions are preferred when accomplices testify against defendants, due to the inherent unreliability of this

testimony." *United States v. Harvey*, 159 F. App'x 451, 458 (4th Cir. 2005) (quoting *United States v. McCabe*, 720 F.2d 951, 955 (7th Cir. 1983)). This particular instruction is typically requested by the defendant as a cautionary protection following adverse testimony from co-defendant accomplices. *See also United States v. Jones*, 545 F.2d 186, 214 (4th Cir. 1976); *United States v. Ollary*, 466 F.2d 545, 547 (4th Cir. 1972). Talley's reliance upon *Hull v. United States* in support of his claim is misplaced. In *Hull*, the trial court had refused to issue a co-defendant accomplice instruction regarding certain witnesses who had testified against the defendant. 324 F.2d 817, 824 (5th Cir. 1963). The Fifth Circuit Court of Appeals held that "the jury should have had an opportunity to decide whether the [witnesses] who testified were accomplices, and then to weigh carefully the credibility of their testimony after receiving a proper cautionary instruction." *Id.* Thus, rather than supporting Talley's claim that a co-defendant accomplice instruction was unwarranted, *Hull* is consistent with the Fourth Circuit's preference for issuing an accomplice instruction under circumstances such as his.

Additionally, although the Fourth Circuit Court of Appeals has generally approved of the use of a paid "informant instruction," it has declined to "decide the question of whether and when an informant instruction is required." *United States v. Luck*, 611 F.3d 183, 187-188 (4th Cir. 2010). Among other circuits, there is however "a consensus that an informant instruction is necessary when the informant's testimony is uncorroborated by other evidence." *Id.* at 187. In the case of uncorroborated testimony, "an informant instruction is necessary because a general witness credibility instruction is not sufficiently cautionary for informants because of special concerns about the incentive that they have to fabricate information for their own benefit." *Id.* That is "the jury needs to be instructed to scrutinize informant testimony more carefully than other

18

witnesses, even biased witnesses, because of the potential for perjury born out of self-interest." *Id.*

In Talley's case, although the District Court's instruction did not explicitly identify Ashley May as a paid informant, the jury was notified that Ashley May had received the benefit of use immunity in exchange for her testimony, that she pleaded guilty pursuant to a plea agreement, and that as a result the jury should consider her testimony with greater care than that of other witnesses. (ECF No. 187 at 74). Furthermore, Ashley May's testimony was in fact corroborated by the testimony of Travis Boling, who testified to his experiences purchasing drugs at the Huntington Inn from both Ashley May and Talley. (ECF No. 186 at 70-85); Launa Seay, who testified to her experiences purchasing drugs from Talley on multiple occasions in and around Huntington, including on July 9, 2009. (*Id.* at 93-114); and Robert Harrison, who testified to his interactions with Ashley May and Talley, which included purchasing drugs from them, running errands for Ashley May, helping Talley move furniture into their trailer,  and doing drugs with his friend Lucky in their trailer. (ECF No. 187 at 13-38). Furthermore, law enforcement officers Deputy Kevin White of the Cabell County Sheriff's Department and Deputy Sheriff Terry McFann of the Cabell County Sheriff's Department both testified to the physical drugs, paraphernalia, and firearm found in the bedroom where Talley was located, pursuant to the search warrant executed on the date of his arrest. (ECF Nos. 186 at 14-42; 187 at 39-61). Accordingly, "the potential for perjury born out of self-interest" was tempered by the fact that multiple sources corroborated Ashley May's testimony.

The undersigned cannot conclude that trial counsel's performance was constitutionally deficient for failure to request an additional jury instruction explicitly

identifying Ashley May as a paid informant, given that Talley received a cautionary jury instruction, and that Ms. May's testimony was corroborated by other witnesses who had firsthand experience purchasing drugs from Talley and Ms. May. Furthermore, there is not a reasonable probability that but for a more thorough informant instruction, the result of Talley's trial would have been different. The Government provided ample and consistent evidence demonstrating Talley's involvement in both the conspiracy and distribution of controlled substances, trial counsel thoroughly cross-examined Ms. May regarding her prior inconsistent statements and the sentencing leniency she received in exchange for her testimony, and the District Court provided a cautionary jury instruction urging the jury to carefully consider her testimony in light of her use immunity and status as an alleged accomplice.

Thus, the undersigned **RECOMMENDS** that the District Court **FIND** that trial counsel did not provide ineffective assistance for failing to object to the accomplice instruction or for failing to request a paid informant instruction regarding the testimony of Ashley May.

### D. § 851 Enhancement at Sentencing

Talley argues that trial counsel provided ineffective assistance at sentencing "by failing to specifically object to his § 851 enhancement, on the ground that the government failed to produce certified documentation. . . of the existence of two prior convictions" in Michigan state court. (ECF No. 207 at 8). Talley does not deny either of the two prior convictions, but argues that his § 851 enhancement was improper because the Government failed "to produce certified copies of pertinent arrest registers, fingerprint exemplars from such registers, certified copies of the state felony drug

convictions and fingerprint exemplars from the United States Marshal in this matter." (*Id.* at 9).

Although the Government bears the burden to prove the fact of a prior conviction beyond a reasonable doubt, 21 U.S.C. § 851(c); *United States v. Wright*, No. 00-4030, 2000 WL 1846340, at *4 (4th Cir. 2000), there is no discernable precedent for Talley's claim that the Government was required to produce certified copies and "fingerprint exemplars" proving his prior convictions for the purpose of the § 851 enhancement. *See United States v. Howard*, 599 F.3d 269, 271-72 (3d Cir. 2010) (rejecting defendant's claim that proof of prior convictions required certified copies); *United States v. Acosta*, 287 F.3d 1034, 1038 (11th Cir. 2002) (finding ample evidence of defendant's prior conviction despite government's inability to produce a certified copy of the adjudication); *United States v. Jones*, 700 F.3d 615, 629 (1st Cir. 2012) ("A prior conviction can be proved through a variety of documents, including certified convictions or other comparable judicial records that detail the fact of conviction, or even a printout of an electronic docket.") (internal marks omitted); see also *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (discussing various evidence which may and may not be used to establish a prior conviction for the purpose of sentencing enhancement under the Armed Career Criminal Act). Accordingly, trial counsel's failure to demand certified copies and fingerprints proving Talley's prior convictions was not unreasonable or otherwise constitutionally deficient.

Even if trial counsel had erred in requiring proof of Talley's prior convictions, Talley has failed to establish any prejudice because he would not have received a more favorable sentence, regardless of whether the § 851 enhancement had been applied or not. *Glover,* 531 U.S. at 203-04; *United States v. Harris,* No. 3:12-CV-127, 2013 WL

4749903, at *7 (E.D. Va. Sept. 3, 2013). Based upon the government's proof of prior conviction, Talley's mandatory minimum sentence increased from 5 years to 10 years. 21 U.S.C. § 841(b)(1)(B). However, based upon the nature of the offense and Talley's criminal history, his recommended sentencing range under the guidelines was between 188 and 235 months imprisonment. (ECF No. 188 at 21). As the District Court noted:

> Whether or not the statutory mandatory minimum is properly 10 years based on the enhancement or should only be five years, the guideline range is not affected either way. The guideline range is still well above either of those statutory mandatory minimums, and at this point I see no reason to believe that Court is going to be influenced by the enhancement and the statutory mandatory minimum.

(*Id.* at 19). Because Talley was sentenced well above the mandatory minimum and in accordance with the guideline range, he has not demonstrated prejudice resulting from trial counsel's failure to challenge the evidence supporting the § 851 enhancement. *See Sapia v. United States*, 433 F.3d 212, 219 (2d Cir. 2005); *Newby v. United States*, Nos. 4:07-CR-51-FL-1, 4:12-CV-42-FL, 2013 WL 7098720, at *5 (E.D.N.C. Mar. 19, 2013).

Thus, the undersigned **RECOMMENDS** that the District Court **FIND** that trial counsel did not provide ineffective assistance for failing to object to the accomplice instruction or for failing to request a paid informant instruction regarding the testimony of Ashley May.

### E.  Overall Performance and Trial Strategy

Finally, Talley argues that trial counsel provided ineffective assistance for failure "to present a reasonable trial strategy," failing to investigate and to interview the government's witnesses, and failing to "pursue character witnesses." (ECF No. 207 at 18-19). In determining whether trial counsel's performance was deficient under the prong of *Strickland*, the Supreme Court has repeatedly cautioned that there are

"countless ways to provide effective assistance in any case." *Harrington*, 131 S.Ct. at 788 (quoting *Strickland* 466 U.S. at 689). "Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach." *Id.* In general, "[d]ecisions about what types of evidence to introduce are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). Moreover, "[a]n attorney can avoid activities that appear distractive from more important duties." *Harrington*, 131 S.Ct. at 789 (quoting *Bobby v. Van Hook*, 558 U.S. 4, 11, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009)).

Talley readily acknowledges that trial counsel informed him "that his trial strategy was attempting to discredit witnesses." (ECF No. 207 at 18). This was not an unreasonable trial strategy, particularly given the fact that a large portion of the Government's case against Talley rested upon the witness testimony of admitted drug users, some of whom had criminal records or had provided prior inconsistent statements regarding Talley. Talley now argues that trial counsel should have "consult[ed] with Talley about any potential witnesses to call on his behalf . . . that could be used to establish the personal character of Movant Talley." (*Id.*). Talley argues that "calling character witnesses to testify that Talley had legitimate businesses may have changed the outcome of the proceedings," as it would have contradicted the Government's characterization of him as a "Detroit Drug Dealer." (*Id.* at 19-20). However, the pertinent inquiry is not which strategy might have been best; "instead, we ask whether the strategy counsel chose was objectively reasonable." *DeCastro v. Branker*, 642 F.3d 442, 451 (4th Cir. 2011). Trial counsel's strategy was plainly reasonable, particularly in light of Talley's prior criminal history, which may very well

23

have run the risk of disclosing to the jury had he testified or attempted to present character witnesses. *See* Rule 404, Federal Rules of Evidence. Furthermore, it is not at all clear that Talley's preferred strategy would have been more sound than the tack taken by trial counsel. Talley asserts that various witnesses "would have testified that Norman Talley did in fact provide them regular haircuts; lawn care services and snow removal services which would showed *[sic]* the jury that Movant Talley had legitimate businesses and paid taxes." (ECF No. 207 at 18). However supportive his potential witnesses might have been, the information he offers is not particularly responsive to the testimony and evidence presented at trial. "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 131 S.Ct. at 789.

Talley further asserts without elaboration that trial "counsel failed to investigate; interview prosecution's witnesses." (ECF No. 207 at 17). Under *Strickland*, trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690. Here, Talley fails to provide any context whatsoever for his claim that trial counsel failed to investigate his case, or interview the Government's proposed witnesses. At any rate, the transcript of Talley's trial plainly discredits this claim of ineffective assistance. Throughout the trial, counsel demonstrated a detailed understanding of Talley's case and defense strategy. Moreover, he aggressively cross-examined the Government's witnesses, drawing out prior inconsistencies in their statements and challenging their credibility and motives to testify. Talley fails to identify

what information might have been gleaned during a pre-trial interview, or how counsel's failure to do so prejudiced him in any way.

Talley has plainly failed to demonstrate that his counsel's trial strategy was unreasonable. He has also failed to establish any prejudice whatsoever resulting from trial counsel's purportedly deficient performance. Thus, the undersigned **RECOMMENDS** that the District Court **FIND** that Talley has failed to establish that trial counsel's overall performance and trial strategy was constitutionally deficient.

## VI. <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

1.  Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 202) be **DENIED**;

2.  The Government's Motion to Deny Talley's § 2255 Motion as Untimely (ECF No. 209) be **GRANTED**; and

3.  This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**:  April 8, 2014.

Cheryl A. Eifert
United States Magistrate Judge